T.C. Summary Opinion 2004-22

UNITED STATES TAX COURT

ALLYSON CHRISTINA BRIGGS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2360-03S.          Filed March 5, 2004.

Allyson Christina Briggs, pro se.

Michael W. Bitner, for respondent.

CHABOT, Judge:  This case was heard pursuant to section 7463 in effect for the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Sec. 7463(b).

---

[1]  Unless indicated otherwise, all section references, other than to sec. 7463, are to sections of the Internal Revenue Code of 1986 as in effect for the year in issue.

Respondent determined a deficiency in Federal individual income tax against petitioner for 1999 in the amount of $523.

The issue for decision is whether petitioner's net loss from her trade or business of providing cleaning and lawn mowing services must be subtracted from her Form W-2 income in determining her "earned income" under section 63(c)(5)(B), relating to limitation on basic standard deduction in the case of certain dependents.

The instant case was submitted fully stipulated; the stipulations, stipulated exhibits, and other exhibits received at the hearing are incorporated herein by this reference.

## Background

When the petition in the instant case was filed, petitioner resided in Washington, Missouri; she also resided there during 1999, the year in issue.

On her timely filed 1999 income tax return--

(1) petitioner claimed a tax filing status of single;

(2) petitioner did not claim a personal exemption deduction, instead that deduction was claimed on her parents' tax return (see sec. 151(d)(2)); and

(3) petitioner claimed a standard deduction of $4,300.

On that tax return, petitioner showed the income items set forth

in table 1.

Table 1

Tax return
(Form 1040)

| line | Item | Amount |
|------|------|--------|
| 7 | Wages | $4,275 |
| 8a | Taxable interest | 7,922 |
| 12 | Business income or (loss) | (3,703) |
| 13 | Capital gain or (loss) | (2,858) |
| 22 | Total income | 5,636 |

The "Business income or (loss)" item listed in table 1 was

the loss from a Schedule C, Profit or Loss From Business, sole

proprietorship, which consisted of petitioner's providing

cleaning and lawn mowing services.

Respondent does not dispute the correctness of any item

shown on petitioner's tax return, except the amount of the

standard deduction and consequential items--taxable income and

tax liability.

## Discussion

### The Statute

In general, section 63 provides that taxpayers are entitled

to the "standard deduction" if they do not elect to itemize

deductions in calculating their taxable income.  For our

purposes, the standard deduction is the "basic standard

deduction"[2].  Section 63(c)(5)[3] limits petitioner's basic standard deduction[4] to no more than $250 plus petitioner's "earned income".

Parties' Contentions

Both sides appear to claim adherence to the 1999 1040 Forms and Instructions, which provide at page 30 the following relevant worksheet:

---

[2]  The "additional standard deduction" relates to aged or blind taxpayers, and does not apply in the instant case.

[3]  SEC. 63.  TAXABLE INCOME DEFINED.

  *     *     *     *     *     *     *

     (c) Standard Deduction.--For purposes of this subtitle--

  *     *     *     *     *     *     *

          (5)  Limitation on basic standard deduction in the case of certain dependents.--In the case of an individual with respect to whom a deduction under section 151 is allowable to another taxpayer for a taxable year beginning in the calendar year in which the individual's taxable year begins, the basic standard deduction applicable to such individual for such individual's taxable year shall not exceed the greater of--

               (A) $500 [adjusted to $700 for 1999, on account of sec. 63(c)(4)], or

               (B) the sum of $250 and such individual's earned income.

[4]  The parties evidently assume, and we do also, that petitioner's parents' claim to petitioner's personal exemption deduction was allowable, and so the limitation of sec. 63(c)(5) applies to petitioner for 1999.

Standard Deduction Worksheet for
Dependents--Line 36                    Keep for your Records

Use this worksheet **only** if someone can claim you (or your spouse
if married filing jointly) as a dependent.

1.  Add $250 to your **earned income\*.**  Enter the total  1._____
2.  Minimum standard deduction. . . . . . . . . . . .  2.<u>700.00</u>
3.  Enter the **larger** of line 1 or 2 . . . . . . . . .  3._____
4.  Enter the amount shown below for your filing status
    . Single--$4,300
    . Married filing separately--$3,600
    . Married filing jointly or qualifying
      widow(er)--$7,200. . . . . . . . . . . . . . .  4._____
    . Head of household--$6,350
5.  **Standard deduction.**
     a. Enter the **smaller** of line 3 or line 4.  If under 65 and
not blind, **stop here** and enter this amount on Form 1040, line 36.
**Otherwise**, go to line 5b. . . . . . . . . . . . . . .  5a._____
     b. If 65 or older or blind, multiply the number on Form
1040, line 35a, by: $1,050 if single or head of household; $850
if married filing jointly or separately or qualifying widow(er).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .5b._____
     c. Add lines 5a and 5b.  Enter the total here and on Form
1040, line 36 . . . . . . . . . . . . . . . . . . . . . .5c._____

**\* Earned income** includes wages, salaries, tips, professional
fees, and other compensation received for personal services you
performed.  It also includes any amount received as a scholarship
that you must include in your income.  Generally, your earned
income is the total of the amount(s) you reported on Form 1040,
lines 7, 12, and 18, minus the amount, if any, on line 27.

     In the notice of deficiency, respondent calculates as
follows:
          7a. STANDARD DEDUCTION
          It is determined that since you are claimed by someone
     else as a dependent for the year 1999, your basic standard
     deduction may not exceed the greater of $700.00 or the sum
     of $250.00 plus your earned income, up to the applicable
     standard deduction amount for that year.  Therefore, your
     standard deduction is $822.00 ($250.00 plus wages of
     $4,275.00 [Form 1040, line 7] plus Schedule C loss of
     $3,703.00 [Form 1040, line 12]) rather than $4,300.00 as

shown on your 1999 return and your taxable income for 1999 is increased $3,478.00.

Petitioner contends "that earned income is only the positive amount"; she contrasts this to "net earnings from self-employment", which could be (and was for petitioner for 1999), a loss.

Respondent draws our attention to legislative history language to the effect that the Congress intended that the standard deduction could be used "only to offset earned income" (H. Conf. Rept. 99-841 (Vol. II) at II-9 (1986); 1986-3 C.B. (Vol. 4) 9), and argues that petitioner's contention must be incorrect because it would allow petitioner to use the standard deduction to offset income that was not earned income.[5]

Respondent urges us to follow the approach of section 32, relating to the credit for earned income. Section 32 provides, in pertinent part, as follows:

---

[5] However, this expression of congressional intent supports respondent's statutory interpretation only by circular reasoning, or "begging the question". That is, respondent assumes that "earned income" in the conference report includes the concept of net earnings from self-employment, and then asks us to conclude that "earned income" in sec. 63(c)(5)(B) includes the concept of net earnings from self-employment. See, e.g., Follett, Modern American Usage 252 (Avenel 1980 ed.) ("begging the question * * * means only: using as an argument some disguised form of the proposition to be proved"); Fowler, Modern English Usage 449 (2d ed. 1965) ("'begging the question'. The fallacy of founding a conclusion on a basis that as much needs to be proved as the conclusion itself. ARGUING IN A CIRCLE is a common variety"); Aldisert, Logic for Lawyers: A Guide To Clear Legal Thinking 208-216 (NITA 3d ed. 1997).

SEC. 32.  EARNED INCOME.

*    *    *    *    *    *    *

(c) Definitions and Special Rules.--For purposes of this section--

*    *    *    *    *    *    *

(2) Earned income.

(A) The term "earned income" means--

(i)  wages, salaries, tips, and other employee compensation, but only if such amounts are includible in gross income for the taxable year, plus

(ii) the amount of the taxpayer's net earnings from self-employment for the taxable year (within the meaning of section 1402(a)), but such net earnings shall be determined with regard to the deduction allowed to the taxpayer by section 164(f).

Petitioner correctly points out that "earned income" in section 32 is defined in the statute (sec. 32(c)(2)(A)(ii)) to include the concept of net earnings from self-employment, but there is no such definition of "earned income" in section 63.

We agree with petitioner's conclusion.

<u>The Table Is Set; The Tax Reform Act of 1969</u>

Section 802 of the Tax Reform Act of 1969 (TRA 1969), Pub. L. 91-172, 83 Stat. 487, 676, significantly increased the standard deduction available to taxpayers who did not itemize deductions.

Section 804 of TRA 1969 (83 Stat. at 685) added section 1348, which provided a 50-percent maximum rate on earned income,

effective for 1971 and thereafter.  Section 1348(b), as so enacted, defined "earned income" in pertinent part as follows:

SEC. 1348.  FIFTY-PERCENT MAXIMUM RATE ON EARNED INCOME.

&ast;&ast;&ast;&ast;&ast;&ast;&ast;

(b) Definitions.--For purposes of this section--

(1) Earned income.--The term "earned income" means any income which is earned income within the meaning of section 401(c)(2)(C) or section 911(b), except that such term does not include any distribution to which section 72(m)(5), 72(n), 402(a)(2), or 403(a)(2)(A) applies or any deferred compensation within the meaning of section 404.

Section 911(b), as then in effect, provided as follows:

SEC. 911.  EARNED INCOME FROM SOURCES WITHOUT THE
    UNITED STATES

&ast;&ast;&ast;&ast;&ast;&ast;&ast;

(b) Definition of Earned Income.--For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered.  In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.

The Revenue Act of 1971

In 1971, the Congress became concerned that

The increases in the standard deduction * * * have enhanced the desirability of diverting income * * *

from the high tax bracket of a donor with substantial
income to a minor with little or no other income.

S. Rept. 92-437 at 62 (1971), 1972-1 C.B. 559, 593. To the same

effect, see Staff of the Joint Committee on Internal Revenue

Taxation, General Explanation of the Revenue Act of 1971 at 60

(J. Comm. Print 1971). Thereupon, the Congress enacted the

predecessor of the provision we deal with, in section 301(a) of

the Revenue Act of 1971 (RA 1971), Pub. L. 92-178, 85 Stat. 497,

520, which provided as follows:

SEC. 301. UNEARNED INCOME OF TAXPAYERS WHO ARE DEPENDENTS
OF OTHER TAXPAYERS.

(a) Limitation of Standard Deduction.--Section 141
(relating to the standard deduction) is amended by adding at
the end thereof the following new subsection:

"(e) Limitations in Case of Certain Dependent
Taxpayers.--In the case of a taxpayer with respect to whom a
deduction under section 151(e) is allowable to another
taxpayer for the taxable year--

"(1) the percentage standard deduction shall be
computed only with reference to so much of his adjusted
gross income as is attributable to his earned income
(as defined in section 911(b)), and

"(2) the low income allowance shall not exceed his
earned income for the taxable year."

The Tax Reduction and Simplification Act of 1977

Section 102(a) of the Tax Reduction and Simplification Act

of 1977, Pub. L. 95-30, 91 Stat. 126, 135, revised the definition

of taxable income by introducing the concept of a zero bracket

amount, hereinafter sometimes referred to as ZBA. The standard

deduction limitation as to dependent taxpayers was moved from

section 141(e) to section 63(e).  The method of calculating the amount of the limitation also was revised.  However, the earned income definition continued to be "earned income (as defined in section 911(b))."

### The Tax Reform Act of 1986

The Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, 100 Stat. 2085, eliminated the ZBA.  Section 102(a), TRA 1986, 100 Stat. at 2099, revised section 63 to accomplish that change as well as numerous other changes.  As may be seen supra note 3, the revision of the dependent taxpayer rule continues the term "earned income", but eliminates the reference to section 911 and does not provide any replacement definition.

### Section 32

Respondent urges us to follow the approach of section 32. As to trade or business income, section 911 focuses on compensation for personal services, while section 32 deals with "net earnings from self-employment".

Section 32, the earned income credit, was initially enacted as section 43[6] by section 204(a) of the Tax Reduction Act of 1975, Pub. L. 94-12, 89 Stat. 26, 30-31.  Subsection (c)(2)(A)(ii) of then-new section 43, in defining "earned income" for purposes of the earned income credit, included the same

---

[6] Sec. 43 was renumbered as sec. 32 by sec. 471(c)(1) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 826.

element to which respondent directs our attention, viz: "(ii) the amount of the taxpayer's net earnings from self-employment for the taxable year (within the meaning of section 1402(a))."

Analysis

From its 1971 origin through its 1977 revision, until TRA 1986, the earned income limitation on the standard deduction was statutorily defined by reference to section 911. In TRA 1986, the Congress chose to remove the reference to section 911 and to not put any other definition in its place. Ordinarily, we would expect that a change in statutory language indicates a change in meaning. Robinson v. Commissioner, 119 T.C. 44, 61-62 (2002) (and cases there cited). We have not found anything in the legislative history to lead us to any different conclusion in this matter. Compare Robinson v. Commissioner, 119 T.C. at 62 n.11. Accordingly, we conclude that "earned income" in section 63(c)(5)(B) means something different from "earned income (as defined in section 911(b))".

Section 32 was amended by several provisions of TRA 1986,[7] including several provisions in the same title of TRA 1986 that revised section 63(c)(5). When section 63(c)(5) was revised, the Congress could have, but did not choose to, incorporate the section 32 language, or reference section 32, or use other

_____

[7] Sec. 32 was amended by secs. 104(b)(1)(B), 111 (5 places), 1272(d)(4), and 1301(j)(8) of TRA 1986.

language to achieve the same definition.  The legislative history does not indicate an intent to define "earned income" in section 63(c)(5)(B) by reference to net earnings from self-employment. Accordingly, we conclude that "earned income" in section 63(c)(5)(B) means something different from "the amount of the taxpayer's net earnings from self-employment for the taxable year (within the meaning of section 1402(a))".[8]

Thus, the Congress (1) in TRA 1986 departed from the previous section 911 definition, (2) in TRA 1986 did not move to the section 32 definition, and (3) never adopted the "maxitax" section 1348 approach of using both section 911 and net earnings.

In RA 1971 the Congress responded to what was perceived to be an abuse situation involving attempts to "game" the tax system.  The legislative language went beyond the intrafamily transfers complained of, but even then the Congress decided that a dependent who received such an intrafamily transfer but also

---

[8] Respondent implicitly recognized that the sec. 63 and sec. 32 concepts of earned income were not the same.  The earned income credit worksheet specifically directs the taxpayer to "Enter any profit (or loss)".  (Emphasis added.)  1999 Publication 596, Earned Income Credit (EIC), at p. 30, Worksheet B, line 2.b.  In contrast the standard deduction worksheet tells the taxpayer that "Generally, your earned income is the total of the amount(s) you reported on Form 1040, lines * * * 12".  1999 1040 Forms and Instructions, at p. 30 (emphasis added).  The standard deduction worksheet does not explain "Generally", and does not specifically direct the taxpayer to include business losses in the earned income computation.

earned some income from his or her own efforts should not be hit so hard by the new anti-abuse rule.

We note that respondent does not suggest that petitioner divided a unitary activity into an employment and a self-employment in order to "game the system". We note that respondent does not suggest that any part of petitioner's $4,275 W-2, Wage and Tax Statement, income was really a gift, or for any other reason was not properly part of petitioner's "earned income" under section 63(c)(5)(B). Instead, it appears that in 1999 petitioner had two income-earning activities, one of which did not produce a profit that year. In the absence of any indication of impropriety on the part of petitioner or her parents, we conclude that we are not required to interpret the term earned income as though (1) the Congress had not intended to change the law when it changed the statutory language or (2) the Congress had intended to change the law to the section 32 model even though the Congress did not use the section 32 language or even indicate in the legislative history that section 32 was to be the model for section 63. Under the circumstances, we conclude that the Congress's purposes are better served by agreeing with petitioner's conclusion in the setting of the instant case.

We hold that petitioner's self-employment loss does not reduce her earned income for purposes of section 63 and on the

record in the instant case, her allowable standard deduction is $4,300, the amount she claimed.

<u>Decision will be entered for petitioner</u>.